NOT DESIGNATED FOR PUBLICATION

No. 126,687

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIMOTHY J. OVERBEY and DOREEN H. COX,
*Appellants*,

v.

LUCAS M. HEMBREE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Submitted without oral argument. Opinion filed August 2, 2024. Reversed and remanded with directions.

*Terry A. Iles*, of Law Office of Terry A. Iles, of Topeka, for appellants.

*Vincent M. Cox*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellee.

Before HURST, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: Timothy J. Overbey and Doreen H. Cox (Homebuyers) argue that the district court erred when it granted Lucas M. Hembree's summary judgment motion. Homebuyers challenge the district court's ruling that they abandoned their ability to recover reasonable attorney fees, court costs, and legal expenses against Hembree for defaulting on their Residential New Construction Contract (Construction Contract) by acknowledging that they were no longer pursuing actual damages in their breach of contract lawsuit against Hembree. They argue that the district court's summary judgment ruling ignored that under the plain language of the Construction Contract's attorney fees clause, they needed only (1) to prove Hembree defaulted and (2) to employ an attorney to

seek reimbursement for reasonable attorney fees, court costs, and legal expenses from Hembree in connection with the default.

As considered below, we conclude that some of Homebuyers' arguments are valid under the applicable law, contract provisions, and facts of this case. Thus, we reverse the district court's summary judgment ruling in Hembree's favor and remand Homebuyers' case to the district court for further proceedings on (1) whether Hembree defaulted on the Construction Contract as alleged by Homebuyers and (2) if so, whether Homebuyers are entitled to reasonable attorney fees, court costs, and legal expenses under the attorney fees clause of the Construction Contract.

FACTS

On May 4, 2020, Homebuyers signed a Construction Contract to buy a newly built house from Hembree in Pottawatomie County, Kansas. Homebuyers bought the house for $230,600, closing on the house on July 24, 2020.

After Homebuyers closed on the house, they noticed structural problems. This resulted in Homebuyers sending Hembree a formal notice of defects letter under K.S.A. 60-4704. In the letter, Homebuyers asserted that Hembree needed to fix 12 structural issues with the house, some of which involved fixtures. Also, four of those problems involved drainage and waterproofing the house. Hembree never responded to Homebuyers' letter of defects.

On November 15, 2021, Homebuyers sued Hembree for breaching the Construction Contract. Homebuyers argued that Hembree had breached the Construction Contract in four ways. First, Homebuyers argued that Hembree violated the Construction Contract "when he failed to construct the residence in accordance with the contract documents, applicable building code and in a workmanlike manner." Second,

2

Homebuyers argued that Hembree violated the express limited one-year warranty provision in the Construction Contract—paragraph 36—when he "failed to make all repairs and replacements of any nature or description to the property, interior or exterior, structural or non-structural, as became necessary by faulty workmanship and materials." Third, Homebuyers argued that Hembree defaulted under the Construction Contract—paragraph 32—"when he failed to properly grade and landscape the property in accordance with the overall drainage plans of the subdivision." Fourth, Homebuyers argued that Hembree breached the Construction Contract and amendment about fixing the retaining wall that "encroached upon the neighbor's property." For their claims, Homebuyers asked for damages in excess of $75,000 as well as reimbursement for attorney fees, court costs, and legal expenses.

Also, although Homebuyers' petition did not explicitly reference paragraph 21 of the Construction Contract, Homebuyers eventually relied on paragraph 21—the provision on defaults, remedies, and attorney fees—to ask the district court for reimbursement of their reasonable attorney fees, court costs, and legal expenses. In addition to explaining what remedies were available for a seller's or buyer's default, paragraph 21 stated that "SELLER or BUYER is in default if either fails to comply with any material covenant, agreement or obligation within any time limits required." And paragraph 21's attorney fees clause stated:

> "If as a result of a default under this Contract, either SELLER or BUYER employs an attorney, the defaulting party shall, unless prohibited by law, reimburse the nondefaulting party for all reasonable attorney's fees, court costs and other legal expenses incurred by the nondefaulting party in connection with the default."

In Hembree's February 14, 2022 answer to Homebuyers' petition, Hembree agreed with some of Homebuyers' factual assertions. Nevertheless, Hembree rejected each of Homebuyers' breach of contract claims and asserted:  (1) that Homebuyers had not stated

3

a claim upon which relief could be granted and (2) that Homebuyers could not prove their breach of contract claims.

Although it is unclear exactly when Homebuyers sold the disputed house, sometime in the summer or fall of 2022, Homebuyers sold the house for $292,000. Since Homebuyers bought the house for $230,600, Homebuyers made a $61,400 profit when they sold the house. This chain of events resulted in Homebuyers' attorney emailing Hembree's attorney on December 8, 2022. In this email, Homebuyers' attorney discussed Homebuyers' plans for continuing litigation:

> "I have heard back from the expert and it appears now that the house has sold that any further damages for depreciated value may be nominal. With that in mind, it will likely not justify paying for the cost of an expert when the report and testimony may likely cost more than the damages awarded. Be that as it may, your client is liable for all attorney fees and legal expenses pursuant to paragraph 21 of [the Construction] Contract."

A few days later, Homebuyers' attorney sent Hembree's attorney a billing summary on his official letterhead. In the letter, Homebuyers' attorney stated that Homebuyers had "incurred $32,705.23 in fees and expenses, which [was] itemized as follows:  $24,628.75 in attorney fees and paralegal fees, and $8,076.48 in expenses." Homebuyers' attorney asserted that although Homebuyers would "not be pursuing damages any further in this lawsuit," he believed that paragraph 21 of the Construction Contract allowed Homebuyers to recover reasonable attorney fees, court costs, and legal expenses.

Afterwards, on February 2, 2023, Homebuyers and Hembree filed competing motions for summary judgment. Over the ensuing months, Homebuyers and Hembree litigated those motions.

4

In Homebuyers' summary judgment motion, Homebuyers argued that they were entitled to summary judgment as a matter of law because the uncontroverted material facts established that Hembree breached the Construction Contract. To prove this, Homebuyers relied on the expert opinion of a professional mechanical engineer, John Lyle, who they had hired to inspect the house. Lyle concluded that the drainage system and many other areas of the house were not built in a workmanlike manner. In a sworn affidavit attached to the motion, Lyle reported problems with the following areas of the house: (1) its plumbing; (2) its drainage; (3) its exterior cladding; (4) its bathroom; (5) its windows; (6) its finishes; (7) its HVAC; (8) its electrical system; (9) its attic; (10) its roof; and (11) its general structure. So, in their summary judgment motion, Homebuyers argued that Lyle's expert opinion definitively proved that Hembree breached the Construction Contract.

In their continued summary judgment argument, though, Homebuyers explained that although they were not withdrawing their summary judgment motion, they no longer "wish[ed] to pursue the depreciated value of the residence in [their] lawsuit." Yet, they still asked the district court to grant their motion against Hembree because they had already proven that Hembree defaulted. Then, Homebuyers argued that under paragraph 21's plain language, because Hembree defaulted, Hembree had to reimburse them for all their reasonable attorney fees, court costs, and legal expenses spent while suing him for defaulting under the Construction Contract. Homebuyers argued that but for Hembree defaulting on the Construction Contract, they would not have spent money on an attorney to sue him.

Thus, in their summary judgment motion, Homebuyers explained the following: (1) that they no longer wanted to pursue actual damages in their lawsuit because any damages awarded since selling the house would likely be nominal; (2) that they were

entitled to summary judgment as a matter of law because the uncontroverted evidence proved that Hembree had defaulted; and (3) that they were entitled to reimbursement for their reasonable attorney fees, court costs, and legal expenses under paragraph 21's plain language because their uncontroverted evidence proved that Hembree defaulted.

Hembree responded that the district court should deny Homebuyers' summary judgment motion. He contended that for each of Homebuyers' breach of contract claims, there were many controverted genuine issues of material fact. So, Hembree asserted that Homebuyers' arguments supporting their summary judgment motion required the district court to make impermissible fact-findings. In addition, Hembree asserted that granting summary judgment would be premature because although Lyle had inspected the house, he had not even designated an expert to inspect the house since discovery was ongoing.

Hembree's arguments against Homebuyers' summary judgment motion also challenged Homebuyers' arguments about their interpretation of paragraph 21's language on attorney fees, court costs, and legal expenses. To begin with, Hembree argued that the plain language of paragraph 21 involved defaults that occurred before closing, nothing else. Relying on this interpretation of paragraph 21, Hembree asserted that Homebuyers were not entitled to attorney fees because they complained about alleged defaults that occurred after they had closed on the house.

Alternatively, Hembree argued that Homebuyers could not prove the elements of any of their breach of contract claims. Hembree stressed that plaintiffs must establish five elements for any breach of contract claim: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083 (2013). Also, Hembree stressed that Homebuyers had admitted that they were no longer seeking actual damages for his

6

alleged breaches of the Construction Contract in their summary judgment motion. Relying on Homebuyers' decision not to pursue actual damages, Hembree argued Homebuyers had abandoned proving the damages element of their breach of contract claims. Thus, he concluded that he could not have defaulted as meant under paragraph 21's plain language because Homebuyers could not prove all the elements of any of their breach of contract claims against him as a matter of law.

In their reply supporting their summary judgment motion, Homebuyers reasserted there were no genuine issues about any material facts as to their breach of contract claims against Hembree. Concerning Hembree's arguments otherwise, Homebuyers responded that Hembree had "provide[d] absolutely no evidence to contradict" their breach of contract claims. As a result, Homebuyers argued that the district court should grant their summary judgment motion and deny Hembree's summary judgment motion because they were entitled to summary judgment as a matter of law. To support their argument that the uncontroverted evidence established that Hembree had defaulted, Homebuyers again underscored Lyle's opinions about the house having many structural defects.

Homebuyers also questioned Hembree's argument about whether they could be reimbursed for reasonable attorney fees, court costs, and legal expenses under paragraph 21 of the Construction Contract. Homebuyers contended that Hembree's arguments about them not being entitled to reimbursement for reasonable attorney fees, court costs, and legal expenses under paragraph 21 ignored that they had already "fully demonstrated that [he had] defaulted under the contract documents." Homebuyers asserted that Hembree's arguments ignored that just because they were not seeking actual damages, did not mean that they had not suffered or could not prove actual damages. And Homebuyers contended that the decisions in *Harder v. Foster*, 54 Kan. App. 2d 444, 401 P.3d 1032 (2017), and *Bhaduri v. L.M.K. Construction, Inc.*, No. 123,731, 2022 WL 3330116 (Kan. App. 2022) (unpublished opinion), established that they did not need to be the prevailing party or to suffer significant damages to be entitled to reimbursement if the disputed

contractual attorney fees clause does not require it. Relying on this caselaw, Homebuyers argued that although they were damaged and could prove damages, they did not have to do so under the plain language of paragraph 21 to be reimbursed for their reasonable attorney fees, court costs, and legal expenses.

For that reason, Homebuyers asked the district court to deny Hembree's summary judgment motion, grant their summary judgment motion, and award them an updated total of $44,747.50 in attorney fees, $8,304.23 in court costs and expenses, and $6,843.75 in paralegal expenses.

*Hembree's Summary Judgment Motion and Related Filings*

In Hembree's summary judgment motion, Hembree repeated some of his defenses against Homebuyers' motion. He argued that the district court should grant his summary judgment motion against Homebuyers because paragraph 21 concerned defaults that occurred before closing. He stressed that Homebuyers "concede[d] that they [were] abandoning any claim of damages against [him], except for the attorney fees and expenses related to [the] lawsuit." Relying on this concession, he argued Homebuyers abandoned their breach of contract claims, and thus, could not prove that he defaulted as required for reimbursement of reasonable attorney fees, court costs, and legal expenses under paragraph 21. Also, according to Hembree, this court's decision in *Alliance Platforms, Inc. v. Behrens*, 49 Kan. App. 2d 53, 305 P.3d 30 (2013), supported the proposition that a plaintiff suing for breach of contract must prove all the breach of contract elements to recover attorney fees under a contractual attorney fees clause.

In their response to Hembree's summary judgment motion, Homebuyers contended that Hembree's reliance on *Alliance Platforms, Inc.* was misplaced. Homebuyers argued that unlike the attorney fees clause at issue in *Alliance Platforms, Inc.*, under paragraph 21's plain language, the district court had to grant the nondefaulting party's requested

8

attorney fees, court costs, and legal expenses upon request. So, Homebuyers argued that although they "elected not to pursue damages," they could recover reasonable attorney fees, court costs, and legal expenses from Hembree as long as they established that Hembree defaulted under the Construction Contract. Then, after citing Lyle's list of alleged defects with their house, Homebuyers concluded that they had already established that Hembree defaulted on the Construction Contract.

Hembree replied that he was not ignoring any evidence that he defaulted under the Construction Contract. Rather, he explained that he disagreed with Homebuyers' assertion that he defaulted. He argued that it would be unfair to grant Homebuyers' summary judgment motion on a finding that there was no genuine issue of material fact since discovery was incomplete. As for his own summary judgment motion, Hembree reasserted that he was entitled to summary judgment against Homebuyers as a matter of law because paragraph 21's attorney fees clause applied to defaults that occurred before closing. Afterwards, Hembree argued that the *Harder* and *Bhaduri* decisions that Homebuyers relied on were not on point because in both of those decisions, juries had already determined that at least one party was in default. See *Harder*, 54 Kan. App. 2d at 448; *Bhaduri*, 2022 WL 3330116, at *1.

*The District Court's Orders*

The district court held a hearing during which the parties repeated their arguments within their motions and filings. After taking the parties' motions under advisement, the district court denied Homebuyers' summary judgment motion and granted Hembree's summary judgment motion.

When denying Homebuyers' summary judgment motion, the district court agreed with Hembree's argument about discovery. It found that Hembree had "satisfied . . . that he cannot present facts to support his opposition to [Homebuyers' summary judgment

9

motion] without the aide [*sic*] of an expert." So, the district court denied Homebuyers' summary judgment motion partly because it was premature. It concluded that it would be unfair to find that Hembree defaulted based on Lyle's expert opinion when Hembree had not even hired an expert.

Then, the district court granted Hembree's motion for summary judgment. In doing so, it did not rely on any of the caselaw that the parties had cited. Rather, it explained:

> "While this litigation was pending, [Homebuyers] sold the property at issue for approximately $60,000.00 more than what they [had] paid for it *and have elected not to pursue any damages claim*. Damages are an element of each of [Homebuyers' breach of contract] claim[s], *so in effect, [Homebuyers] have withdrawn them*." (Emphases added.)

Based on this reasoning, it ruled that "there [was] no default under the contract because [*Homebuyers had*] *abandoned their claim for damages*." (Emphasis added.) Lastly, it ruled that it did not need to consider any of the parties' remaining arguments, including whether Hembree defaulted under paragraph 21, based on its ruling that Homebuyers effectively withdrew their breach of contract claims, and their ability to prove Hembree defaulted on the Construction Contract, by "abandon[ing] their claim for damages."

Homebuyers timely appeal the district court's orders.

ANALYSIS

*Did the district court err when it granted Hembree's summary judgment motion?*

Homebuyers appeal the district court's summary judgment ruling against them and in favor of Hembree, asking this court to reverse and remand their case to the district court for further proceedings on whether Hembree defaulted on the Construction Contract, and thus, was contractually bound to reimburse Homebuyers for their

10

reasonable attorney fees, court costs, and expenses under paragraph 21. Highly summarized, Homebuyers raise two related arguments why this court should reverse the district court's summary judgment rulings. First, they argue that "while they may have abandoned their claims for actual damages, they never abandoned any claim against [Hembree] for recovery of attorney fees, court costs and other legal expenses" under paragraph 21's attorney fees clause. Second, Homebuyers argue that the district court should have denied Hembree's summary judgment motion because genuine issues of material fact remained in dispute. Specifically, Homebuyers argue "whether [Hembree] defaulted under the [Construction] Contract" and "whether [they] incurred attorney fees, court costs and other legal expenses in connection with [Hembree's] default" were still disputed genuine issues of material fact.

In response, Hembree contends that this court should affirm the district court's summary judgment rulings in his favor and against Homebuyers for the following reasons: (1) because Homebuyers have no right to reimbursement of reasonable attorney fees, court costs, or legal expenses under paragraph 21's plain language for the alleged defaults; (2) because by "conced[ing] they have no damages," Homebuyers abandoned their breach of contract claims against him; (3) because by abandoning their breach of contract claims against him, Homebuyers could not prove he defaulted as required to recover reasonable attorney fees, court costs, and legal expenses under paragraph 21; and (4) because granting summary judgment in Homebuyers' favor would have been premature during discovery and before he designated his expert to inspect the house.

*Standards of Review*

This court's standard for reviewing a district court's decision to grant or deny a summary judgment motion is well known:

11

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]' *Gaumer v. Rossville Truck & Tractor Co.*, 292 Kan. 749, 751-52, 257 P.3d 292 (2011)." *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 962, 298 P.3d 250 (2013).

As for the standard for reviewing the district court's award of attorney fees, this issue is a question of law over which this court has unlimited review. *In re Estate of Oroke*, 310 Kan. 305, 317, 445 P.3d 742 (2019).

Likewise, interpretation of language within a contract is a question of law over which this court has unlimited review. *Waste Connections of Kansas, Inc.*, 296 Kan. at 964. When interpreting language in a contract, the controlling rule is the parties' intent. 296 Kan. at 963. "'If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" 296 Kan. at 963. Put another way, if the contract's plain language establishes the drafter's intent, this court must interpret the contract as meant under its plain language. Additionally, this court's interpretation of the contract must be reasonable and consistent with all the terms of the contract. 296 Kan. at 963.

*Paragraph 21's Plain Language, Paragraph 36's Plain Language, and Relevant Caselaw*

This appeal hinges on the interpretation of the meaning of paragraph 21's attorney fees clause within the Construction Contract. For instance, interpretation consists of determining the intent and the meaning of the words used by the parties. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963 (holding that the primary rule when interpreting a contract is to determine the parties' intent as shown in the contract's plain language and holding that if the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction). Although Hembree challenges the importance of the Construction Contract's limited one-year warranty clause, both parties recognize that the limited one-year warranty clause under paragraph 36 of the Construction Contract plays a role in this court's interpretation. So, to determine whether the district court correctly interpreted and applied paragraph 21 when denying Homebuyers' summary judgment motion and granting Hembree's summary judgment motion, this court must consider paragraph 21's and paragraph 36's plain language in their entirety. Because the *Harder* and *Bhaduri* decisions involved contractual attorney fees clauses that are identical to the contractual attorney fees clause in paragraph 21, this court's interpretation of paragraph 21's attorney fees clause also involves those decisions.

Paragraph 21, the "DEFAULTS AND REMEDIES" section of the Construction Contract, provides as follows:

> "SELLER or BUYER is in default *if either fails to comply with any material covenant, agreement or obligation within any time limits required.* Following a default by either SELLER or BUYER, the other party shall have the following remedies, subject to the provisions of Paragraph 13 [Earnest Monies and Additional Deposits]:
>     a. If SELLER defaults, BUYER may (i) *specifically enforce this Contract and recover damages suffered by BUYER as a result of the delay in the acquisition of the Property*; or (ii) terminate this Contract by written notice to SELLER and, at

13

BUYER's option, pursue any remedy and damages available by law or in equity. If BUYER elects to terminate this Contract, the Earnest Money shall be returned to BUYER subject to the provisions of Paragraph 13.

b. If BUYER defaults, SELLER may (i) specifically enforce this Contract and recover damages suffered by SELLER as a result of the delay in the sale of the PROPERTY; or (ii) terminate this Contract by written notice to BUYER and, at SELLER'S option, either retain the Earnest Money as liquidated damages as SELLER'S sole remedy and not as a penalty or pursue any other remedy and damages available at law or in equity.

"If as a result of a default under this Contract, either SELLER or BUYER employs an attorney, the defaulting party *shall*, unless prohibited by law, *reimburse the nondefaulting party for all reasonable attorney's fees, court costs and other legal expenses incurred by the nondefaulting party in connection with the default*." (Emphases added.)

In relevant part, paragraph 36, the "LIMITED ONE YEAR WARRANTY" section of the Construction Contract, states the following:

"SELLER shall assign any warranties given to SELLER by suppliers of appliances, machinery, equipment, plants, sod, trees, etc. incorporated into this property. . . .

a. LIMITED ONE YEAR WARRANTY: SELLER warrants the property for a period of one (1) year from the closing date, against structural and mechanical defects brought to SELLER'S attention in writing within that time. SELLER, at SELLER'S expense, shall make all repairs and replacements of any nature or description to the property, interior or exterior, structural, or non-structural, as shall become necessary by reason of faulty workmanship or materials which are brought to SELLER'S attention in writing *within one year after the closing date*. . . ." (Emphasis added.)

As a result, neither paragraph 21 nor paragraph 36 explicitly defines what constitutes defaulting under the Construction Contract. All the same, the term "default" is implicitly defined in the first sentence of paragraph 21, which states: "SELLER or BUYER is in default if either *fails to comply with any material covenant, agreement or*

14

*obligation* within any time limits required." (Emphasis added.) In other words, *a seller or buyer is in default whenever the seller or buyer fails to comply with the plain language of any promise between the parties under the Construction Contract.*

Subsections (a) and (b) of paragraph 21, which immediately follow this implicit definition of default, outlines the buyer's remedies if the seller or buyer defaults on the Construction Contract. Paragraph 21(a) gives the buyer two options upon proving that the seller defaulted: (1) The buyer may specifically enforce the Construction Contract as stated under subsection (a)(i); or (2) the buyer may terminate the Construction Contract as stated under subsection (a)(ii). Under subsection (a)(ii), if the buyer chooses to terminate the contract, he or she gets his or her *earnest money* back. Earnest money is money that a prospective buyer deposits with the seller to show his or her good-faith intention to complete the contract. Black's Law Dictionary 642 (11th ed. 2019). Hence, if a buyer terminates the Construction Contract under paragraph 21 based on the seller's default *and* the buyer recovers his or her earnest money, it follows that the buyer and seller never closed on the property. In addition, paragraph 13's rules regarding earnest money specifically refer to returning the buyer's earnest money if the buyer validly terminated the Construction Contract.

On the other hand, paragraph 21(a)(i) involves a buyer who wants to specifically enforce the Construction Contract despite the seller's default. Particularly, under subsection (a)(i), the buyer may specifically enforce the contract as a remedy for a seller's default that resulted in the "delay in the acquisition of the Property." The phrase "delay in the acquisition of the Property" is ambiguous. The phrase could mean that the seller's actions resulted in the buyer not acquiring ownership of the property the day that the buyer and seller had originally scheduled closing. At the same time, though, the phrase could mean that a buyer closed on the property, moved into the property, and then discovered that the seller had violated terms of the contract. Under such circumstances, the buyer did not acquire the property as promised by the seller under the contract at

15

closing. Thus, the seller would delay the buyer's acquisition of the property in the condition as promised under the Construction Contract.

Although paragraph 21(a)(i)'s phrase "delay in the acquisition" is somewhat ambiguous, the preceding interpretation of paragraph 21(a)(i) is supported by *Harder*'s precedent that such attorney fees clauses should be interpreted broadly. Likewise, the preceding interpretation is supported by paragraph 36's limited one-year warranty clause.

In *Harder*, a jury found that Ronald Foster, the seller, breached multiple provisions of a real estate contract between Foster and Evelyn Harder. The disputed attorney fees clause in *Harder* is identical to paragraph 21's attorney fees clause in this case. 54 Kan. App. 2d at 453. Hence, it stated that the defaulting party had to reimburse the nondefaulting party's reasonable attorney fees, court costs, and legal expenses in connection with the default. When Harder's attorney moved for attorney fees for the first time posttrial, the district court granted Harder's motion. Yet, when Harder moved for attorney fees, court costs, and legal expenses "in connection with" her first motion for attorney fees, court costs, and legal expenses, the district court denied her motion. 54 Kan. App. 2d at 453. The district court determined that the attorney fees clause did not cover this posttrial work because "the fees requested were not generated in connection with the default, but rather were related to litigating [an earlier] motion for attorney fees." 54 Kan. App. 2d at 453.

Upon Harder's appeal to this court, this court reversed the district court. It ruled that the phrase "in connection with" was broad enough to require the defaulting party to reimburse the nondefaulting party for any attorney fees (1) that "'may reasonably be assumed to have been within the contemplation of both parties'" when drafting the contract, or (2) that "'may fairly be considered as arising, in the usual course of things, from the breach itself.'" 54 Kan. App. 2d at 545-46. It also explained that although attorney fees were not consequential damages, because Harder and Foster's real estate

contract used the phrase "in connection with," the attorney fees clause was "similar to the contracts principle of consequential damages." 54 Kan. App. 2d at 455. This meant that when considering a contractual attorney fees clause, "damages for breach of contract 'are limited to those damages which may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach.'" 54 Kan. App. 2d at 455.

As a result, the *Harder* decision stands for the proposition that when applying contractual attorney fees clauses, courts should construe the attorney fees clause broadly. In other words, courts should not add any limiting language into an attorney fees clause. And courts should construe the attorney fees clause in a manner consistent with the drafter of the contract's intent. See 54 Kan. App. 2d 455-56. Also, because the attorney fees clauses in this case and in *Harder* are identical, the *Harder* court's interpretations and holdings are relevant to this court's interpretation of paragraph 21's attorney fees clause in this case.

Meanwhile, paragraph 36(a)'s limited one-year warranty clause provides that the seller must pay for all defects resulting from seller's "faulty workmanship or materials which are brought to SELLER's attention in writing within one year after the closing date." As explained already, a court must interpret a contractual provision as stated in its plain language and in a way that is consistent with the whole contract. *Waste Connections of Kansas, Inc*., 296 Kan. at 963. So, interpreting paragraph 21's and paragraph 36's plain language together, it is readily apparent that absent language to the contrary, paragraph 21's attorney fees clause applies from when seller and buyer enter the contract until *at least one year after closing on the newly constructed house*.

In short, if paragraph 21's attorney fees clause applied to defaults only before the seller and the buyer closed on the newly constructed house, buyers who invoke paragraph

17

36's one-year limited warranty, which explicitly states that the warranty period starts on the closing date, could never recover attorney fees, court costs, and legal expenses under paragraph 21. Thus, this interpretation is inconsistent with the *Harder* court's holding that an identical attorney fees clause should be interpreted and applied broadly so the nondefaulting party could recover any reasonable sum associated with suing the defaulting party. 54 Kan. App. 2d at 455. Likewise, it is inconsistent with the attorney fees clause's plain language, which simply states that it applies to a seller or buyer alleging that the other party defaulted on the Construction Contract.

On the other hand, interpreting paragraph 21's attorney fees clause as applicable to defaults that occurred only from when seller and buyer entered the contract until at least one year after closing on the newly constructed house is further supported by the fact that the Construction Contract is a standard property contract. In a standard property contract, one would interpret that the drafter's word choice was intentional. In turn, one would interpret that the drafter would have explicitly included language that paragraph 21's attorney fees clause applied to defaults that the seller or buyer committed only before closing if this was the drafter's true intent. In a nutshell, the Construction Contract drafter's word choice supports that the drafter wanted a seller or a buyer to be able to seek reimbursement of reasonable attorney fees, court costs, and expenses under paragraph 21's attorney fees clause for defaults that occurred both before and after closing.

As for whether paragraph 21's attorney fees clause requires a buyer or seller to suffer damages, paragraph 21's attorney fees clause refers to a defaulting party and a nondefaulting party. Once more, it states:

> "If as a result of a default under this Contract, either SELLER or BUYER employs an attorney, the defaulting party shall, unless prohibited by law, reimburse the nondefaulting party for all reasonable attorney's fees, court costs and other legal expenses incurred by the nondefaulting party in connection with the default."

18

But nothing within paragraph 21's plain language on attorney fees requires the seller or buyer to prove damages before asking for reimbursement of attorney fees. Indeed, paragraph 21's attorney fees clause does not even require the seller and buyer to sue each other. So, under paragraph 21's plain language, a buyer asking for reimbursement of reasonable attorney fees, court costs, and legal expenses need show only the following: (1) that the seller defaulted by violating a promise within the Construction Contract and (2) that the buyer hired an attorney because of the seller's default.

In addition, interpreting paragraph 21's attorney fees clause as not requiring proof of damages to be invoked is consistent with *Harder*'s precedent to construe the same language as the attorney fees clause in this case broadly. Also, it follows this court's *Bhaduri* decision, which held that unless a contractual attorney fees clause requires the buyer or seller to be awarded significant damages, a seller or buyer does not have to prove that he or she was significantly damaged to obtain reimbursement of attorney fees under the contractual attorney fees clause. See 2022 WL 3330116, at *11. Of note, like the *Harder* decision, the *Bhaduri* decision involved this court's interpretation of an attorney fees clause that is identical to paragraph 21's attorney fees clause. 2022 WL 3330116, at *7.

In *Bhaduri*, a jury found that L.M.K. Construction, Inc., the seller, had not breached its construction contract with Sasha Bhaduri as to whether it timely constructed her new house. The jury also agreed with L.M.K.'s counterclaim that Bhaduri prevented it from timely constructing her new house. But the jury awarded no damages to L.M.K. 2022 WL 3330116, at *1. Still, because the parties' contract had an attorney fees clause, L.M.K. moved for attorney fees posttrial. Ultimately, the district court awarded L.M.K. about $51,000 in attorney fees, court costs, and legal expenses. When Bhaduri appealed the district court's ruling, she argued that because the jury awarded L.M.K. no damages,

"the district court's award of attorney fees and expenses was unreasonable as a matter of law." 2022 WL 3330116, at *2.

On appeal, however, this court rejected Bhaduri's arguments. This court affirmed the district court's decision to award L.M.K. attorney fees despite the jury awarding L.M.K. no damages for Bhaduri's breach of contract. 2022 WL 3330116, at *1-2, 11. With that in mind, this court also affirmed the district court's decision because there was no prevailing party requirement under the attorney fees clause that is identical to the attorney fees clause under paragraph 21. So, in *Bhaduri*, this court held that not being awarded damages and not being the prevailing party did not prevent a party from moving for contract-based attorney fees as long as the attorney fees clause at issue did not require such proof. Of further note, the *Bhaduri* court ruled that mitigated damages still constituted damages under a breach of contract claim. 2022 WL 3330116, at *11-12.

Thus, like the *Harder* decision, *Bhaduri* stands for the proposition that courts should construe contractual attorney fees clauses as the drafter intended. This means that this court should not add limiting language to a contractual attorney fees clause—like requiring the movant to be the prevailing party or requiring an award of significant damages. See *Bhaduri*, 2022 WL 3330116, at *11. Additionally, like the *Harder* decision, because the attorney fees clauses in this case and in *Bhaduri* are identical, the *Bhaduri* court's interpretations and holdings are relevant to this court's interpretation of paragraph 21's attorney fees clause in this case. In summary, the *Bhaduri* decision is highly persuasive authority that because paragraph 21's plain language contains no requirement that the buyer seeking reimbursement of reasonable attorney fees, court costs, and legal expenses prove that he or she was the prevailing party or was significantly damaged, a buyer moving for reimbursement of those expenses under paragraph 21 of the Construction Contract in this case does not have to prove that he or she was the prevailing party or significantly damaged by the seller's defaults to be reimbursed. See 2022 WL 3330116, at *11.

Next, paragraph 21's attorney fees clause refers to a defaulting party and a nondefaulting party. Once more, it states:

> "If as a result of a default under this Contract, either SELLER or BUYER employs an attorney, the defaulting party shall, unless prohibited by law, reimburse the nondefaulting party for all reasonable attorney's fees, court costs and other legal expenses incurred by the nondefaulting party in connection with the default."

By referring to a defaulting and nondefaulting party, when Homebuyers and Hembree entered the Construction Contract, it is clear that they intended paragraph 21's attorney fees clause to apply only after either party proved the other party defaulted. But nothing within paragraph 21's attorney fees clause's plain language requires the seller or the buyer to prove damages before asking for reimbursement. Indeed, as explained by the *Bhaduri* court's interpretation of the identical attorney fees clause, paragraph 21's attorney fees clause does not even include language that the seller or buyer requesting reimbursement was the prevailing party. 2022 WL 3330116, at *11.

For that reason, the plain language of paragraph 21 as well as the *Bhaduri* court's holdings support that the seller or buyer requesting reimbursement under paragraph 21's attorney fees clause must establish that the other party defaulted. But that authority does not require the seller or buyer requesting reimbursement under paragraph 21 to be the prevailing party or to be awarded significant damages. So, a seller or buyer requesting reimbursement of his or her reasonable attorney fees, court costs, and legal expenses under paragraph 21 must prove that the other party defaulted. As a result, to invoke paragraph 21's attorney fees clause, paragraph 21's plain language and the *Bhaduri* court's holdings support that the nondefaulting party need prove only (1) that the other party defaulted and (2) that this default resulted in him or her hiring an attorney.

*Paragraph 21's and Paragraph 36's Application to the Parties' Arguments*

Having interpreted paragraph 21's plain language, paragraph 36's plain language, and the caselaw that the parties rely on when making their arguments, we will address the parties' appellate arguments.

To start, it is clear that two of the parties' arguments are incorrect under paragraph 21's plain language. First, before the district court and on appeal, Hembree has argued that paragraph 21's plain language establishes that it applies to only defaults that occurred before the seller and buyer closed on the new house. Hembree emphasizes that under subsection (a)(ii) and (a)(i) of paragraph 21, a buyer's remedy for a seller's default was limited to "terminat[ing]" the Construction Contract and recovering damages resulting from "a delay in the acquisition of the Property," respectively. According to Hembree, this language "makes it clear" that he could have defaulted on the Construction Contract only before closing. As argued by Homebuyers in their reply brief, though, Hembree's interpretation of paragraph 21 strains the meaning of its plain language.

As this court recognized in its earlier interpretation of paragraph 21(a)(i)'s phrase "delay in the acquisition," this phrase is somewhat ambiguous. But paragraph 36's limited one-year warranty clause proves that paragraph 21's defaults, remedies, and attorney fees clauses apply from when seller and buyer enter the contract to at least one year after closing. If this court interpreted paragraph 21's attorney fees clause as applying just to defaults before closing, this would mean no seller or buyer who proved the other party defaulted while paragraph 36's limited one-year warranty clause was active could recover attorney fees under paragraph 21. Put simply, interpreting paragraph 21's attorney fees clause as applying just to defaults that occurred before the seller and buyer closed is unreasonable. It is inconsistent with the purpose of paragraph 21's attorney fees clause, which is to put the nondefaulting party back in the position that he or she would be in if there was no default. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963 (courts

22

must interpret contract provisions reasonably and in a way that is consistent with the entire contract).

Second, Homebuyers repeatedly argue that they have already established that Hembree defaulted. They argue that the district court erred by granting Hembree's summary judgment motion because they had "demonstrated that [Hembree] defaulted under the [Construction] Contract." But as Hembree persuasively argues, our Supreme Court precedent establishes that "[a] district court judge may not decide disputed issues of material fact on summary judgment, even if the claims sound in equity rather than law." *Stechschulte*, 297 Kan. 2, Syl. ¶ 1. Also, it establishes that summary judgment is usually improper until the parties have completed discovery. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). This court is duty-bound to follow our Supreme Court precedent absent some indication our Supreme Court is moving away from its previous precedent. *Tillman v. Goodpasture*, 56 Kan. App. 2d 65, 77, 424 P.3d 540 (2018). As of now, there is no indication that our Supreme Court is moving away from the preceding precedent on denying summary judgment motions. For that reason, the district court correctly denied Homebuyers' argument because granting Homebuyers' summary judgment motion would have been unfair to Hembree since they were still completing discovery.

Notwithstanding the problem with Homebuyers' argument about having already proved that Hembree defaulted, Homebuyers' primary argument about paragraph 21's plain language is persuasive. Homebuyers' primary argument is that whether they conceded that they were not pursuing actual damages is irrelevant for purposes of determining whether they could recover contractual attorney fees under paragraph 21's attorney fees clause. They argue that the clause's plain language allowed them to seek reimbursement for reasonable attorney fees, court costs, and legal expenses without pursuing actual damages, prevailing in litigation, or even filing a lawsuit. Hence, Homebuyers argue that although they conceded that they no longer sought actual

damages from Hembree, under paragraph 21 of the Construction Contract, they still incurred damages. And for this reason, they argue that they still had a valid claim for reasonable attorney fees, court costs, and legal expenses incurred while trying to address Hembree's violations of the Construction Contract.

Additionally, Homeowners argue that the *Harder* and *Bhaduri* decisions support their interpretation of paragraph 21 because in those cases, this court interpreted the identical attorney fees clause broadly and without adding any limiting language into the clause.

Hembree responds that because Homebuyers stopped pursuing actual damages for their breach of contract claims against them, it necessarily follows that Homebuyers cannot prove the damages element for their claims as a matter of law. So, like the district court determined, Hembree argues that Homebuyers abandoned pursuing actual damages, which meant that they could not prove their breach of contract claims. And he argues that this, in turn, meant that Homebuyers could not prove that he defaulted as meant under paragraph 21's attorney fees clause.

In making his argument, Hembree challenges Homebuyers' reliance on the *Harder* and *Bhaduri* decisions for several reasons, including that in both cases, a jury had already determined that there were defaulting parties. Hembree also contends that the *Alliance Platforms, Inc.* decision is more instructive in resolving Homebuyers' appeal. According to Hembree, in *Alliance Platforms, Inc.*, this court "concluded that, even though the defendant in that case 'technically violated the contract', [*sic*] the plaintiff in that case could not recover attorney fees under a prevailing party provision, because the plaintiff failed to prove the damages." So, Hembree argues that under *Alliance Platforms, Inc.*'s precedent, a party who sues another party for breaching a contract that contains an attorney fees clause cannot recover attorney fees under that clause unless the party actually proves more than a technical breach of contract claim.

Nevertheless, Hembree's reliance on and interpretation of *Alliance Platforms, Inc.* is misplaced. As emphasized by Homebuyers in their reply brief, the *Alliance Platforms, Inc.* decision involved whether an arbitrator erred by denying both Alliance's and Moxy Solutions, LLC's requests for attorney fees when they both established a single breach of contract claim against each other. 49 Kan. App. 2d at 54. In addition, unlike paragraph 21's attorney fees clause, the attorney fees clause in *Alliance Platforms, Inc.* explicitly stated that only a "prevailing party" could be reimbursed for attorney fees. 49 Kan. App. 2d at 57. Here, the plain language of paragraph 21's attorney fees clause does not say that the seller or buyer invoking the clause must be the prevailing party; this was a fact the *Bhaduri* court found important when interpreting the attorney fees clause. 2022 WL 3330116, at *11. So, the underlying facts as well as attorney fees clause in this case are distinguishable from those in *Alliance Platforms, Inc*.

As for Homebuyers' reliance on the *Harder* and *Bhaduri* decisions, Hembree correctly points out that those cases are distinguishable from this case because they involved established defaults. In *Harder*, a jury determined that Foster breached his real estate contract with Harder before Harder requested contractual attorney fees. 54 Kan. App. 2d at 448. And in *Bhaduri*, a jury determined that Bhaduri breached her construction contract with L.M.K. Construction before L.M.K. Construction moved for attorney fees under their contract's attorney fees clause. 2022 WL 3330116, at *1-2. We agree with these distinctions.

But the term "default" is often used interchangeably with the legal claim of "breaching a contract." Black's Law Dictionary defines default as "[t]he omission or failure to perform a legal or contractual duty." Black's Law Dictionary 526 (11th ed. 2019). Similarly, the plain language of paragraph 21 of the Construction Contract states that a default occurs when either a buyer or seller "fails to comply with any material covenant, agreement or obligation." So, paragraph 21 defines the term "default" as violating a promise under the Construction Contract.

25

Nevertheless, the violation of some promise in a paragraph of the Construction Contract, that is, a default, is not the same as a legal claim for breaching a contract, which would require any plaintiff to prove its five elements. Proving that a seller violated a provision of a contract is ostensibly easier than proving the five elements of breaching a contract. Again, those elements are the existence of a contract, sufficient consideration, the plaintiff's performance, the defendant's breach, and the plaintiff suffering damages because of the defendant's breach. *Stechschulte*, 297 Kan. at 23. Indeed, proving that a defendant violated a promise in his or her contract with plaintiff is literally one of the five elements of a breach of contract claim—the defendant's breach. In short, it necessarily follows that proving a seller or buyer defaulted as meant under paragraph 21 is easier to establish than proving a legal claim that the seller or buyer breached the Construction Contract.

Thus, it is significant that paragraph 21's plain language requires that a seller or buyer prove only that the other party defaulted to request reimbursement of reasonable attorney fees, court costs, and legal expenses. By requiring proof that only the other party defaulted to get reimbursed for attorney fees, compared to proving a legal claim of breach of contract, paragraph 21's plain language supports that a seller or buyer who proves the other party defaulted under paragraph 21's plain language may request reimbursement for reasonable attorney fees, court costs, and legal expenses without successfully suing the other party for breach of contract. Not limiting the reimbursement of reasonable attorney fees, court costs, and legal expenses to sellers or buyers who successfully sue the other party for breach of contract is also consistent with the *Harder* and *Bhaduri* courts' choices to interpret the identical attorney fees clauses broadly but without reading limiting language into the clause. *Harder*, 54 Kan. App. 2d at 455-56; *Bhaduri*, 2022 WL 3330116, at *11.

As a result, paragraph 21's plain language allows a nondefaulting buyer to seek reimbursement of reasonable attorney fees, court costs, and legal expenses upon showing

26

that the seller defaulted. In short, the analysis in the *Harder* decision and the *Bhaduri* decision proves that under paragraph 21's contractual attorney fees clause, a seller or buyer may request reimbursement of reasonable attorney fees, court costs, and legal expenses upon establishing that the other party defaulted.

So, as argued by Homebuyers, the district court erred when it determined that Homebuyers "abandoned their claim for damages" by not seeking actual damages against Hembree, which meant that they could not prove Hembree defaulted as a matter of law. Under paragraph 21's plain language, Homebuyers needed to allege only that Hembree defaulted, that is, violated a promise within the Construction Contract, to seek reimbursement of their reasonable attorney fees, court costs, and legal expenses. As a result, although Homebuyers decided not to pursue actual damages, they did not abandon their claim for reimbursement of reasonable attorney fees, court costs, and legal expenses under paragraph 21 as ruled by the district court. Under paragraph 21 of the Construction Contract's plain language, Homebuyers needed to prove only that Hembree defaulted on the Construction Contract, not successfully sue Hembree for breach of the Construction Contract, to seek reimbursement of their reasonable attorney fees, court costs, and legal expenses. Simply put, Homebuyers' argument that they were not required to seek or prove actual damages to move for reimbursement of their reasonable attorney fees, court costs, and legal expenses is persuasive.

Whether a seller violated a provision of a contract with a buyer is a question of fact that must be determined before the district court. *Waste Connections of Kansas, Inc.*, 296 Kan. 943, Syl. ¶ 4 (holding that whether a contract has been breached is a question of fact). Thus, this court cannot decide whether Hembree defaulted on the Construction Contract as required under paragraph 21's plain language to be reimbursed for reasonable attorney fees, court costs, and legal expenses. Instead, because whether Hembree defaulted remains a disputed genuine issue of material fact, this court must reverse the

district court's summary judgment ruling as it relates to Homebuyers' request for reimbursement of attorney fees and remand to the district court for further proceedings.

Reversed and remanded with directions.