NOT DESIGNATED FOR PUBLICATION

No. 127,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AUGIE BOGINA and METROPOLITAN PROPERTIES, LLC,
*Appellants*,

v.

5700 BARTON, LLC, and SCOTT LONG,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Oral argument held February 4, 2025. Opinion filed April 3, 2026. Affirmed.

*Bryan W. Smith* and *Christine Caplinger*, of Smith Law Firm, of Topeka, for appellants.

*Burke D. Robinson*, of Long & Robinson, LLC, of Kansas City, Missouri, for appellee 5700 Barton, LLC, and *Scott C. Long*, appellee pro se.

Before WARNER, C.J., GARDNER and HURST, JJ.

HURST, J.: Buyers, defined herein, contracted to purchase a property from 5700 Barton, LLC, with the intent to use the property for further development. The purchase contract contemplated that Buyers—at their own expense—would seek zoning changes and any other necessary government approval to allow the property to be used for Buyers' intended purpose. Despite the parties' efforts, they could not come to terms and complete the sale of the property. Buyers contend they suffered damages from Seller's failure to complete the sale and pursued claims for fraud, breach of contract, specific performance,

1

injunctive relief, and unjust enrichment. The district court dismissed the fraud claim and granted summary judgment in favor of the defendants on all the remaining claims.

On appeal, Buyers contend the district court erred in each decision. They argue that Seller wrongly benefited from the Buyers' expenses incurred in obtaining governmental approval for the Buyers' intended use of the property. Finding no error, the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The property at issue is located at 5700 Barton Street in Shawnee (the Property). In May 2018, Scott Long, an attorney for 5700 Barton, LLC, purchased the Property at a foreclosure sale for $32,301. And a little over a year later, on June 15, 2019, Long deeded the property to 5700 Barton, LLC.

*The Contract for Purchase of the Property*

On August 3, 2021, Augie Bogina, who later assigned his purchase right to Metropolitan Properties, LLC (referred to collectively as Buyers), contracted with 5700 Barton, LLC (Seller), to purchase the Property for $155,000 (the Contract). The Contract stated that Buyers would pay $1,000 earnest money into the escrow account of Assured Quality Title, and the closing date was set for December 15, 2021.

Relevant to this appeal, Section 8 of the Contract provided that the Seller would deliver and pay for title insurance and provided a mechanism for Buyers to object to matters in the title commitment:

> "8. TITLE INSURANCE: Seller shall deliver and pay for an owner's ALTA title insurance policy insuring marketable fee simple title in Buyer in the amount of the

2

Purchase Price as of the time and date of recording of Seller's Warranty Deed (the 'Deed'), subject only to the Permitted Exceptions defined below. Seller shall, as soon as possible and not later than twenty (20) days after the Effective Date of this Contract, cause to be furnished to Buyer a current commitment to issue the title policy (Title Commitment), to be issued through Assured Quality Title (the 'Title Company'). Buyer shall have ten (10) days after receipt of the Title Commitment (the 'Title Review Period') in which to notify Seller in writing of any objections Buyer has regarding any matters shown or referred to in the Title Commitment. Any matters which are set forth in the Title Commitment and to which Buyer does not object within the Review Period shall be deemed to be permitted exceptions to the status of Seller's title (the 'Permitted Exceptions'). With regard to items to which Buyer does object within the Review Period, Seller shall have ten (10) days after receipt of Buyer's written notice of objections to cure such objections ('Title Cure Period').

"If Seller does not cure the objections by the end of the Title Cure Period or if Seller and Buyer have not agreed to extend the Title Cure Period by amending this Contract, then this Contract shall automatically be terminated unless Buyer Waives the objections no later than ten (10) days after the end of the Title Cure Period."

*The Title Commitment Encumbrances*

Title encumbrance issues arose during the negotiations that contributed to the failed sale. The first title commitment from Assured Quality Title identified "Exceptions" in Schedule B, Part II that it would not insure "unless cleared to the satisfaction" of the company. At issue here, the title commitment included an Exception, referred to herein as the Barton Place Declaration Exception, described as "Covenants, conditions and restrictions filed September 10, 2008, in Book 200809 at Page 002611." The Barton Place Declaration filed on September 10, 2008, details the former owner's intent to develop the land and the adjacent tracts to include multiple condominium buildings for commercial and residential use.

3

This meant that Assured Quality Title would have issued the title insurance policy without curing the Barton Place Declaration Exception, but it would not have provided coverage for any dispute or issue related to the Barton Place Declaration. As permitted by Section 8, Buyers objected to the Barton Place Declaration Exception, which prompted the parties to enter into the "First Contract Addendum" on August 17, 2021. In that addendum, the parties agreed to extend the closing date if necessary or to permit Buyers to terminate the Contract and have their escrow payment returned if Seller could not cure the Barton Place Declaration Exception:

> "Prior to Closing, Seller will obtain a Quiet Title Action to remove the [Declaration Exception]. If Seller is unable to obtain such Quiet Title Action prior to Closing, Buyer and Seller mutually agree to extend the Closing Date or Buyer may terminate the Contract and all earnest money deposited in Escrow shall be returned to Buyer, regardless of other language in the contract."

Seller worked to resolve Buyers' objection by obtaining a default judgment, effectively releasing the Barton Place Declaration Exception encumbrance. The parties then executed the "First Amendment to Contract," which provided Buyers would pay an additional earnest deposit of $4,000 that would be "fully refundable until the title company removes the exception for the [Barton Place Declaration]." The addendum and amendment demonstrated the parties' understanding that if Seller was unable to resolve the Barton Place Declaration Exception, Buyers could terminate the Contract.

Although Seller obtained a default judgment in its quiet title action to remove the Barton Place Declaration Exception, because the default judgment was appealable for up to a year, Assured Quality Title refused to remove the Barton Place Declaration Exception as an encumbrance from the title commitment. Rather than terminate the Contract or accept the title insurance with the Barton Place Declaration listed as an Exception, the parties changed the title insurer in hopes of a better result.

4

The new title company, Chicago Title, issued a preliminary title commitment in early December 2021 and issued a corrected title commitment on December 9, 2021. Both the preliminary and revised title commitments from Chicago Title identified the following potential outstanding lien (the 4600 Judgment Lien) on the Property under Schedule B, Part I, as a "Requirement" for Seller to:

"Furnish for recordation a Satisfaction or Release of the judgment, for the amount shown below, and any other amounts due:

| | |
|---|---|
| Amount: | $26,758.89 |
| Debtor: | Orin Sweeney Investments, LLC |
| Creditor: | Beacon Sales Acquisition, Inc dba Roof Depot |
| Date entered: | September 15, 2017 |
| County: | Johnson |
| Court: | District |
| Case No.: | 17CV04660." |

The next day, Buyers' attorney, Mark Bodine, emailed Long about concerns with the title commitment "[p]ursuant to Section 8 of the Commercial Real Estate Contract." Specifically, Buyers wanted additional assurances about the Barton Place Declaration because there was still time for the defaulting party to appeal the judgment. The email also directed that Seller must satisfy the 4600 Judgment Lien, identified in the email as Exception 16. Two days later, Long responded that he believed the 4600 Judgment Lien should have been extinguished through the foreclosure action in which he purchased the Property. Long said he would request that the title company reconsider its designation but declined to take any further steps to cure or resolve the 4600 Judgment Lien. The closing date of December 15, 2021, passed without the parties resolving the issues regarding the 4600 Judgment Lien.

The parties continued negotiations after the closing date but never reached a resolution. On April 6, 2022, after the Parties ceased negotiations for the purchase of the Property, Long and Beacon Sales Acquisition, Inc., filed a release of the 4600 Judgment Lien in Johnson County District Court. Buyers contend that Seller subsequently listed the Property for sale at $183,000—approximately $28,000 more than the Contract price.

*The Due Diligence Activities*

During the Contract term, Buyers took steps to replat the Property and obtain zoning approval for its intended purpose. The Contract included a 120-Day "Due Diligence Period" for Buyers to obtain its desired governmental approval or assurances the Property could be used for its intended purpose. If Buyers were unable to obtain such approvals, they could cancel the Contract. Buyers obtained the necessary governmental approval for their intended use of the Property on November 15, 2021.

DISCUSSION

Buyers and Seller contracted for the sale and purchase of the Property, but they were unable to come to an agreement regarding title encumbrances and never completed the sale. Buyers allege they suffered damages from the failed sale related to their time and costs to replat and rezone the Property for their intended use.

Buyers Augie Bogina and Metropolitan Properties, LLC, filed their initial petition against 5700 Barton, LLC, and Scott Long and asserted five claims: (1) breach of contract; (2) specific performance; (3) temporary injunction; (4) fraud; and (5) unjust enrichment. Seller and Long filed a motion to dismiss Buyers' fraud claim and request for injunctive relief. The court denied the motion as to the injunctive relief claim but dismissed the fraud claim "for failure to comply with K.S.A. 60-209(b)." The district

court later dismissed Buyers' amended fraud claim on the same basis and thereafter granted the defendants summary judgment on the remaining claims.

On appeal, Buyers allege that they properly submitted a fraud claim and that material fact disputes prohibited summary judgment on the remaining claims.

I.      NO ERROR IN DISMISSAL OF THE BUYERS' FRAUD CLAIM.

The district court dismissed the fraud claim for failure to state a claim on which relief could be granted. Under K.S.A. 60-212(b)(6), this type of dismissal occurs before discovery and is based on the district court's review of the pleadings and associated documents. A dismissal for failure to state a claim means that even assuming the accuracy of the pleadings, there is no available relief. See K.S.A. 60-212(b)(6).

Kansas, like many states, requires fraud claims to be pled with specificity. A party must "state with particularity the circumstances constituting fraud or mistake." K.S.A. 60-209(b). The petition must state facts that, if true, demonstrate each element of the fraud claim; and Kansas courts strictly enforce this particularity requirement. See, e.g., *Palmer v. Brown*, 242 Kan. 893, 901, 752 P.2d 685 (1988) (holding that an appellant's petition did not allege fraud with sufficient particularity).

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited appellate review. *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). In conducting this review, the appellate court views the petition and  assumes the truth of the asserted facts and reasonable inferences drawn therefrom by resolving conflicts in favor of the plaintiff. *Kudlacik v. Johnny's Shawnee, Inc*., 309 Kan. 788, 790, 440 P.3d 576 (2019). This review gives the plaintiff some benefit of the doubt. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. 309 Kan. at 790.

7

The First Amended Petition sets forth the following relevant facts in support of the Buyers' fraud claim:

**"Count IV — Fraud**

. . . .

"104. As the parties agreed to change the title company to Chicago Title on November 8, 2021, an initial title report was provided to the parties on December 3, 2021, upon which the title report stated three judgments attached to the property.

"105. At the request of Long, Chicago Title reconsidered the judgments initially listed on the title report.

"106. Chicago Title issued an amended title report on December 9, 2021, which removed two of the judgments but determined the 4660 judgment again runs with the property.

"107. On December 10, 2021, Mark Bodine, an attorney representing Bogina notified Long of his objections to the 4660 judgment on the title report. This was within the 10 day title review period outlined in the agreement.

"108. As part of the agreement, Long had 10 days of receipt of Bogina's objections to cure these issues.

"109. Closing was to occur December 15, 2021. As this issue had arisen less than 2 weeks prior to closing, Bogina's realtor asked Long for an extension of the closing date to resolve any title issues.

"110. Long had knowledge of the 4660 judgment prior to closing.

"111. Bogina objected to the 4660 judgment within the title objection period.

"112. Long never notified Bogina of his intention to not clear the 4660 judgment from the property.

"113. Bogina, having awareness Long was an experienced lawyer specializing the [*sic*] real estate law, acted in reliance on the agreement obligating Long to provide Bogina with clear and marketable title to the property.

"114. Bogina relied on Long's expertise as a real estate lawyer in the Kansas City area for nearly 30 years to be capable of clearing the 4660 judgment from the property.

"115. Long made no efforts to clear the 4660 judgment from the property other than asking Chicago to reconsider its position.

8

"116. Long knew or should have known the judgment could have been removed before the contract expired.

"117. After Chicago Title did not change positions, Long refused to sign any contract extensions and give Bogina the option to accept the property subject to the 4660 judgment or cancel the agreement. Additionally, he stated if Bogina was going to back out of the agreement, Long intended to re-list of property for sale for 'substantially more than what you guys have it under contract for now.' *(Exhibit Z)*

"118. Long refused to extend the agreement knowing Bogina has spent significant time and money seeking platting and site plan approvals which improved the value of the property.

"119. As Long knew the re-platting and new site plan increased the value of the property, Bogina was given the option of purchasing the property without clear and marketable title or cancel the agreement and renegotiate an agreement to purchase the property for a higher price than the one originally contract[ed for].

"120. Long attempted to fraudulently induce Plaintiffs into assuming the risk for the lien or paying more for the property after the contract expired because he knew Bogina invested time and effort into obtaining the platting and site plan approval.

"121. [C]ontinued to negotiate over the property and the 4660 judgment until March 2022.

"122. After communications to purchase the property at the original price ceased, Long obtained removal of the 4660 judgment on April 6, 2022[,] when it filed a joint partial release of judgment and lien signed by Long and Beacon Sales.

"123. Defendants have received and will continue to receive the benefits of the property's increased value to Bogina's detriment.

"124. Long currently has the property listed for sale for $183,000, approximately $28,000 more than what he agreed to sell the property to Bogina for. *(Exhibit EE)*

"125. Long did not have clear title to the property, nor did he make any discernable effort to provide marketable title to Bogina upon closing.

"126. As a result of Long's actions, or lack thereof, Bogina has incurred damages in excess of $75,000."

In dismissing the fraud claim, the district court found "that both the allegations as well as the level of specificity do not rise to the level that they adequately state a claim under Kansas law [f]or fraud . . . . I think this is, in essence, a dressed-up contract claim."

On appeal, both parties focus on the district court's conclusion that the fraud claim was merely a recited contract claim. Buyers contend that the fraud claim is factually distinct from the breach of contract claim because the "Defendants' refusal to close on the property is separate from Defendants' failure to remove the judgment from the property." While Buyers are correct that a single transaction could give rise to both a breach of contract and fraud claim, whether they can successfully assert both claims depends on the facts.

*Fraudulent Omission*

Buyers' primary fraud argument is that Seller intentionally and wrongly failed to notify Buyers of Seller's decision not to cure the 4600 Judgment Lien and deliver marketable fee simple title. This is an allegation of fraud by silence or omission, which occurs when: (1) the defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff. *Stechschulte v. Jennings*, 297 Kan. 2, 21, 298 P.3d 1083 (2013).

Even assuming Seller determined at some point it was unwilling to cure the 4600 Judgment Lien, and further assuming Seller was obligated to notify Buyers of that decision, Buyers must show it incurred damages in reasonable reliance on that silence.

First, they must demonstrate that reliance on Seller's silence was reasonable. Second, Buyers must show that damages resulted from that reasonable reliance. Here, that means Seller's wrongful silence would have had to occur *before* Buyers' damages (that is the cost to replat and rezone the Property).

Buyers allege their reliance on Seller's silence was reasonable because Buyers "relied on Long's expertise as a real estate lawyer in the Kansas City area for nearly 30 years to be capable of clearing the 4660 judgment from the property." However, Long's status as an attorney did not automatically create a special duty of care in the transaction absent a showing that the parties intended or expected Long to advise Buyers. See e.g., *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 506, 827 P.2d 758 (1992) (prohibiting legal malpractice claims when there is no intent for the third party to rely on the attorney for legal services). While a special, fiduciary-type relationship can exist between parties on the opposite sides of a transaction, Buyers have failed to demonstrate that here they have such a relationship with Seller. See *Stroud v. Ozark Nat'l Life Ins. Co.*, 320 Kan. 180, Syl. ¶ 6, 564 P.3d 725 (2025) ("Those who are competent and able to protect their interests may not abandon all caution and responsibility for their own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the person alleged to be a fiduciary."). Moreover, Buyers had their own legal representation during at least parts of the negotiations. Under these circumstances, this court cannot say that Buyers' reliance on Long's silence regarding Seller's intent to cure the 4600 Judgment Lien was reasonable.

Nonetheless, even if this court assumes that Buyers could reasonably rely on Long's silence in these circumstances, they failed to allege they incurred damages *in reliance* on that silence. Damages in a fraud action must stem from fraudulent conduct. "It is a familiar rule in Kansas courts that a plaintiff must show his or her reliance on the disputed communications and resulting detriment in order to establish fraud by omission

11

or commission." *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 53, 11 P.3d 1134 (2000).

Buyers received city approval for its intended use of the Property on November 15, 2021—about two weeks before the parties received Chicago Title's preliminary title commitment which first identified the 4600 Judgment Lien. Therefore, Buyers' costs to replat and rezone to obtain that approval occurred before the parties even knew about the 4600 Judgment Lien. This means Buyers did not incur damages in reliance on Seller's silence.

To be clear, despite Buyers' attempt to imply nefarious conduct because of Long's extensive involvement with the Property, there is no allegation that Seller knew about the 4600 Judgment Lien before the Chicago Title Company preliminary report on December 3, 2021. Moreover, to the extent Buyers attempt to more generally argue that Seller always knew—from the beginning of the Contract—that it would not cure a title encumbrance like the 4600 Judgment Lien, Buyers assert no facts supporting that allegation. On the contrary, Seller made efforts to cure the Barton Place Declaration Exception. The parties even amended the Contract in November 2021 to make Buyers' earnest money fully refundable if Seller could not remove the Barton Place Declaration encumbrance. This demonstrates Seller's intent to cure encumbrances even after Buyers had already engaged in activity to replat and rezone the Property.

Buyers fail to show damage resulting from reasonable reliance on Seller's allegedly fraudulent omission. See *Nichols*, 270 Kan. at 53 (requiring detrimental reliance to support a fraud claim). Therefore, the well-pleaded facts and any reasonable inferences drawn from them, even if true, fail to state a fraud claim by silence or omission.

*Fraudulent Inducement*

Buyers also attempt to shoehorn their argument into a fraudulent inducement claim. Under this theory, Buyers allege that they relied on Seller's false representations in the Contract that Seller would provide clear and marketable title at closing. On appeal, Buyers argue that Seller was willing to clear encumbrances until "the property had been made more valuable by Plaintiffs' new platting and site plan approval." They apparently contend that Seller was merely stringing them along until that time when the Buyers' efforts increased the Property's value.

The elements of a fraudulent inducement claim are: (1) false representations of a material fact; (2) the defendant knew the representations to be false or made them with reckless disregard for their veracity; (3) the defendant made the representations intentionally to induce the plaintiff to act upon them; and (4) the plaintiff reasonably relied and acted on the false representations resulting in damages. *Stechschulte*, 297 Kan. at 19. The fraudulent inducement claim shares most of the same elements with Buyers' fraudulent omission claim, except it also requires a showing that "the defendant made the representations intentionally for the purpose of inducing another party to act upon them." 297 Kan. at 19.

Buyers fail to assert facts demonstrating that Seller knew *at the time of entering the Contract* that it would not cure title encumbrances. When, as here, the alleged fraudulent inducement stems from promises of future conduct—such as the Contract language where Buyers contend Seller promised to deliver marketable fee simple title— then the "gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent misrepresentation concerning a present, existing intention to perform, when no such intention existed." *Gerhardt v. Harris*, 261 Kan. 1007, 1013-14, 934 P.2d 976 (1997).

13

There is no evidence supporting an inference that at the time Seller entered the Contract, Seller did not intend to cure title encumbrances. Seller made efforts to cure the Barton Place Declaration encumbrance, showing an intent to perform under the Contract to provide marketable fee simple title at closing. Additionally, there is no evidence that Seller's decision to not cure the 4600 Judgment Lien related to Buyers obtaining platting and zoning approval. For example, Seller made efforts to resolve other issues listed in Chicago Title Company's first title commitment, even after the city approved Buyers' replat and rezone actions. Buyers acknowledged this in their petition, stating that "[a]t the request of Long, Chicago Title reconsidered the judgments initially listed on the title report." There were three judgments listed on Chicago Title Company's first title commitment, and two were removed in the revised commitment, leaving only the 4660 Judgment. There is no temporal connection between Seller's unwillingness to cure the 4600 Judgment Lien and Buyers obtaining city approval for its intended use of the Property.

Buyers failed to present facts supporting either of its fraud theories. There are no facts that Seller made an intentional misstatement for the purpose of inducing Buyers into entering the Contract. Buyers also failed to show that they reasonably relied on Seller's statements or omissions resulting in damage. Therefore, the district court did not err in dismissing Buyers' fraud claim for failing to state a claim with particularity under K.S.A. 60-209(b).

## II.    SELLER AND LONG'S SUMMARY JUDGMENT

Buyers also contend that the district court erred in granting summary judgment on the remaining claims, which included breach of contract, unjust enrichment, specific performance, and injunctive relief. This court reviews the district court's summary judgment decision de novo to determine whether no genuine issue of material fact exists

14

and whether the movant is entitled to judgment as a matter of law. *GFTLenexa, LLC*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

In this review, facts and reasonable inferences are once again drawn in favor of Buyers, but not every factual dispute is material. See 310 Kan. at 982 ("When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact."). A factual dispute is material if it affects the controlling legal issue. Therefore, factual disputes that do not affect the judgment do not preclude summary judgment. See 310 Kan. at 982 ("In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case.").

1.    *Breach of Contract*

Buyers allege that Seller and Long breached the Contract by: (1) obtaining the wrong type of default judgment related to the Barton Place Declaration; and (2) failing to satisfy the 4600 Judgment Lien and deliver title to the Property. As an initial matter, the Contract for the sale of the Property was executed by and between "Augie Bogina and/or Assigns" as "Buyer" and 5700 Barton, LLC, as "Seller." Bogina eventually assigned his contract rights to Metropolitan Properties, LLC. In this appeal, Buyers refer to both 5700 Barton, LLC and Long jointly as "Defendants" in their breach of contract claim, but Long was not a party to the Contract. See *GFTLenexa*, 310 Kan. at 986 ("In the absence of a third-party beneficiary, a contract binds only the parties that enter into the contract.").

Buyers argue that Long should be individually liable as an alter ego of 5700 Barton, LLC, but they never sought to pierce the corporate veil to assert that claim at the district court. See *Pemco, Inc. v. Kansas Dept. of Revenue*, 258 Kan. 717, 723, 907 P.2d 863 (1995) (piercing corporate veil when justice requires); *Sampson v. Hunt*, 233 Kan. 572, Syl. ¶ 3, 665 P.2d 743 (1983) (listing the factors considered significant in justifying a disregard of the corporate entity). This court will not entertain Buyers' attempt to assign

15

Long liability for the first time on appeal. Long was not a party to the Contract and cannot be subject to a breach of contract claim on appeal without more.

A breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 (1976). This court exercises unlimited review to interpret the Contract related to the breach of contract claim. *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007). The primary rule of contract interpretation is to determine the parties' intent from the contract terms. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). When interpreting a contract, the terms and passages cannot be read in isolation but must be considered as a whole relative to the entire contract. 296 Kan. at 963. Moreover, the law favors reasonable contract interpretations that do not undermine the agreement's purpose or lead to an absurd result. 296 Kan. at 963. This court will only find a contract ambiguous if its language is of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992).

Buyers contend that the Contract required the Seller to deliver marketable fee simple title as provided in Section 13:

"At or before Closing, Seller agrees to properly execute and deliver into escrow the Deed, a Bill of Sale for any non-realty portion of the Property, and all other documents and funds necessary to complete the Closing. The Deed shall convey to Buyer marketable fee simple title to the Property, free and clear of all liens and encumbrances, other than the Permitted Exceptions."

The Contract also required the Seller to "deliver and pay for an owner's ALTA title insurance policy insuring marketable fee simple title in Buyer in the amount of the Purchase Price as of the time and date of recording of Seller's Warranty Deed (the

'Deed'), subject only to the Permitted Exceptions defined below." The Contract explains that "[a]ny matters which are set forth in the Title Commitment and to which Buyer does not object within the Review Period shall be deemed to be permitted exceptions to the status of the Seller's title."

Section 8—governing title insurance—also contains the parties' responsibilities to address matters in the title commitment:

> "Buyer shall have ten (10) days after receipt of the Title Commitment (the 'Title Review Period') in which to notify Seller in writing of any objections Buyer has regarding any matters shown or referred to in the Title Commitment. Any matters which are set forth in the Title Commitment and to which Buyer does not object within the Review Period shall be deemed to be permitted exceptions to the status of Seller's title (the 'Permitted Exceptions'). With regard to items to which Buyer does object within the Review Period, Seller shall have ten (10) days after receipt of Buyer's written notice of objections to cure such objections ('Title Cure Period').
>
> "If Seller does not cure the objections by the end of the Title Cure Period or if Seller and Buyer have not agreed to extend the Title Cure Period by amending this Contract, then this Contract shall automatically be terminated unless Buyer Waives the objections no later than ten (10) days after the end of the Title Cure Period."

This is a standard provision which permits the Buyers to review the title commitment to determine whether it wants any matters resolved before purchase.

*Seller's Obligation to Cure Matters in the Title Commitment*

Buyers try to distinguish between Seller's obligation regarding the Barton Place Declaration Exception and the 4600 Judgment Lien. The initial Quality Assured Title commitment listed the Barton Place Declaration as an "Exception" in Schedule B, Part II, which meant the title insurance policy would "not insure against loss or damage resulting from" the Barton Place Declaration. By contrast, in both Chicago Title commitments, the

17

4600 Judgment Lien was listed as a "Requirement" under Schedule B, Part I, which meant the instructions to "[f]urnish for recordation a Satisfaction or Release of the judgment" "must be met" before the insurer would issue the title insurance policy as written. Buyers contend that Bodine's December 10 email did not constitute an objection to the 4660 Judgment Lien under Section 8 of the Contract because it merely "reiterated to Defendants that removal of the [4600 Judgment Lien] was a requirement of the title commitment prior to closing."

Although Buyers are correct that the title company treats items listed in Schedule B, Part I and Part II differently, the question is whether the parties had different obligations under the Contract for those items. In a roundabout argument, Buyers contend that the Contract required Seller to cure the 4600 Judgment Lien because as a "Requirement," the Seller would not have been able to obtain the title insurance without curing it. However, as explained above, the Contract contemplated a sale where unresolved encumbrances would become a Permitted Exception to the "status of the Seller's title" and allowed the Seller to seek title insurance to accommodate those Permitted Exceptions. In fact, it appears that Buyers knew the sale could move forward with the 4600 Judgment Lien unresolved, because during the ongoing negotiations, they offered to accept the 4600 Judgment Lien as an exception in exchange for a reduction in the purchase price.

The Seller's Contract obligation to convey marketable fee simple title and provide title insurance were both subject to exceptions and limitations. Contrary to Appellant's argument, the Contract contemplated circumstances where the Property's deed would have encumbrances and permitted the Seller to convey a deed "free and clear of all liens and encumbrances, *other than the permitted exceptions*." (Emphasis added.) The Contract provided a mechanism for Buyers to object to "any matters shown or referred to in the Title Commitment." However, if the Buyers failed or declined to object to a matter in the

18

title commitment, then "[a]ny matters which are set forth in the Title Commitment" would become Permitted Exceptions to the Seller's title status.

The Contract language permitting the Buyers to object to "any matters" in the title commitment imposes a duty on them to object lest the matter become a Permitted Exception. The Contract makes no distinction between matters identified in the title commitment under Schedule B, Part I or Schedule B, Part II. Buyers cannot insert additional language into the Contract to distinguish Seller's responsibility to cure title encumbrances described by the title company as "Required." See *Simon*, 250 Kan. at 679-80 (other agreements cannot be used to alter the terms of a complete, unambiguous written agreement).

Buyers' attempt to incorporate the title commitment's language regarding "Requirements" into the Contract, without reading the Contract as a whole, would lead to an absurd result and render terms related to objecting to the title commitment and Permitted Exceptions meaningless or senseless. "The law favors reasonable interpretations, and results that vitiate the purpose of the terms of the agreement to an absurdity should be avoided." *Levin v. Maw Oil and Gas*, 290 Kan. 928, Syl. ¶ 2, 234 P.3d 805 (2010). When the terms of the contract are clear and ambiguous, as they are here, this court will not read provisions in isolation or use other agreements or concepts of fairness to create ambiguity where none exist. See *Waste Connections*, 296 Kan. at 963 (must read contract provisions together).

The Contract did not require Seller to cure all potential encumbrances identified in the title commitment (no matter what), even if identified as a "Requirement." If Buyers failed to object to a matter on the title commitment, the sale could have moved forward with that item becoming a Permitted Exception to the status of Seller's title. Therefore, Seller did not breach the Contract simply by failing to deliver marketable fee simple title on the December 15 closing date.

19

*Buyers Objected to the 4600 Judgment Lien*

Having found that the Contract did not require Seller to cure the 4600 Judgment Lien absent Buyers' objection, this court must determine whether Buyers objected, and whether Seller breached by not curing the 4600 Judgment Lien after that objection. Bodine, on behalf of Buyers, sent the December 10 email "[p]ursuant to Section 8" of the Contract and stated that "Exception 16 Judgment of the Beacon Sales Acquisition" (referred to herein as the 4600 Judgment Lien) "must be satisfied or released or the exception removed." Operatively, Bodine's December 10 email notified Seller that Buyers did not want the 4600 Judgment Lien to become a Permitted Exception to the status of Seller's title under the Contract:

"I represent Augie Bogina and Metropolitan Properties, LLC in the purchase of 5700 Barton, Shawnee, KS. We are in receipt of the Chicago Title Insurance Commitment Number: KCC212053, Revision 12.09.01.

"Pursuant to Section 8 of the Commercial Real Estate Contract, Buyer has the following comments and/or objections regarding the Commitment:

"**Schedule B- Section I: Requirements:**

"Exception 16 Judgment of the Beacon Sales Acquisition must be satisfied or released or the exception removed.

"**Schedule B- Section II: Requirements [*sic*]:**
. . . .
"In addition, Pursuant to The First Contract Addendum, the Seller was to obtain a quiet title action to remove the Barton Place Condominiums and Lof[ts De]clarations. I note that a Journal Entry of Default was entered on September 29, 2021 in Johnson County Case number 21CV3774. . . . As you may be aware, K.S.A 60-260 permits a party to set aside a judgment for a period of 1 year if the judgment [was] entered at the inadvertence, surprise, or excusable neglect of the defaulting party. It seems to me such a

20

claim could be greatly diminished if the principals have actual knowledge of the default judgment quieting title.

. . . .

"I view this as a title encumbrance even though it does not appear on Chicago Title Insurance Commitment Number: KCC212053, Revision 12.09.01. The Buyer has actual knowledge of the Declaration. I question whether a title defect would be insured when the Buyer has actual knowledge. That is one reason we will require Endorsement 9.1-06, At a minimum we will require the Seller to warrant with title insurance that the Barton Place Declaration is not enforceable against Metropolitan Properties, LLC as purchaser of Tract 2."

As the district court found, this email was an objection under Section 8 of the Contract. Therefore, Bodine's December 10 email triggered the Seller's 10-day Title Cure Period. If Seller failed to cure the objection in that 10-day Title Cure Period, then the "Contract shall automatically be terminated unless Buyer waives the objections no later than ten (10) days after the end of the Title Cure Period." The Contract did not require Seller to cure the objection.

In response to Bodine's objection email, Long explained that the Property had been purchased through a foreclosure action and implied that he did not believe the 4600 Judgment Lien created a likely risk:

"The foreclosure action through which seller obtained title to the property occurred after the above-referenced judgment was entered. Seller has addressed the issue with the title company, and it is reconsidering the exception. Other than the existence of the exception, do you have any reason to believe any attachment of the judgment to the property would survive foreclosure?"

Long also emailed Chicago Title Company on December 13, 2021, seeking to have the 4600 Judgment Lien removed from the title commitment. Long's email stated that he had provided documents reflecting the Property's foreclosure and sheriff's sale that postdated

the 4600 Judgment Lien and argued that those events "would have wiped the property clean of any blemish caused thereby."

On December 13, 2021, two days prior to the original closing date, Buyers' realtor sent a proposed Third Amendment to the Contract to extend the closing date to December 22, 2021, to allow more time to work through the title issues. Long replied the next day and opined that the chances were slim that the judgment holder would act on the old 4600 Judgment Lien in the 10 months until the passage of time wiped it out. Long acknowledged that the 4600 Judgment Lien still posed a risk, but declined to amend the Contract to extend the closing date.

He explained "If [Chicago Title] won't get rid of the exception, your client has two options. It can proceed and accept the slight risk of Beacon Acquisition enforcing its judgment (a risk in the amount of the judgment—$24,000ish from memory). Or it can back out of the contract." Long stated that despite the contrary Contract language, he would agree to release the escrowed funds if Buyers backed out of the Contract. If Buyers backed out of the Contract, Long said he would then relist the Property the following summer for "substantially more" than Buyers' agreed purchase price.

While the Contract did not require Seller to cure the encumbrance, either with or without Buyers' objection, Buyers attempt to create ambiguity by focusing on the short length of time between when the parties became aware of the 4600 Judgment Lien and the anticipated closing date. The Contract gives Seller 10 days to cure Buyers' title commitment objection, and in the event Seller did not cure, the Buyers would have 10 days thereafter to decide whether to waive the objection. Nothing in that language requires Seller to cure the Buyers' objections. While the Contract does not specifically address the scenario where the title encumbrance becomes known so close to the closing date, that does not make the Contract ambiguous. The Contract does not have multiple conflicting interpretations—but rather, when read as a whole, the parties' intent is clear

22

from the Contract's terms. See *Kansas Heart Hospital, L.L.C., v. Idbeis*, 286 Kan. 183, 205, 184 P.3d 866 (2008) (A contract is ambiguous only when the document has multiple meanings and leaves genuine uncertainty as to the intent of the parties.). A contract cannot and need not predict and address every possible scenario the parties may encounter related to its terms.

Moreover, the parties clearly worked within the Contract's terms to resolve the matter. Consistent with the Contract terms, Buyers objected to the 4600 Judgment Lien on December 10, 2021, five days before closing date. Seller then notified Buyers before the closing date that it did not intend to cure the lien. Thereafter, Buyers had the option to waive the objection and continue with the sale having the 4600 Judgment Lien become a Permitted Exception—but Buyers did not waive their objection before the closing date. While the time for Buyers to consider whether to waive the objection was shorter than 10 days, the parties continued negotiations past the closing date. Among the negotiations was an offer from Long in early February 2022 that each party hold half of the full amount of the 4600 Judgment Lien in escrow (calculated by Buyers' attorney to total $40,138.34) after the purchase in the event the judgment lien-holder filed an action before September 15, 2022—when Long believed the passage of time would extinguish the lien. Buyers counteroffered to purchase the Property with the 4600 Judgment Lien identified as a Permitted Exception to the title insurance for a $10,000 reduction in the sale price.

In the negotiations that continued over the next two months, Buyers still never agreed to waive the objection. Thus, the short timeframe between Buyers' objection to the 4600 Judgment Lien and the closing date was immaterial to the parties' failure to complete the sale of the Property. The parties followed the Contract terms and still failed to accomplish the sale of the Property—but that failure does not constitute a breach of the Contract. The Contract contemplated that the sale would not occur and the Contract

23

would terminate in the event Buyers objected to a matter in the title commitment that Seller failed to cure—which is what occurred here.

Finally, Buyers passingly refer to the Seller's duty of good faith and fair dealing to suggest summary judgment was inappropriate on the breach of contract claim. However, Buyer fails to adequately brief this issue or demonstrate it was brought up to the district court and it is therefore waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (A point raised incidentally in a brief is deemed waived or abandoned.). The district court did not err in granting summary judgment to Seller and Long on the breach of contract claim.

2.      *Unjust Enrichment*

Buyers also contend there is a question of fact preventing summary judgment on their unjust enrichment claim because their efforts to rezone and replat the Property unjustly enriched Seller. In support of this claim, Buyers point to the Seller listing the Property for sale at a higher price than the original Contract sale price.

Unjust enrichment is an equitable theory of liability stemming from principles of quasi-contract, where a promise implied in law exists that one party will restore the other party to a condition dictated by equity. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 176, 910 P.2d 839 (1996). To recover under a theory of unjust enrichment, the prevailing party must show: (1) a benefit conferred on the opposing party by the plaintiff; (2) the opposing party's appreciation or knowledge of the benefit; and, (3) the opposing party's acceptance or retention of the benefit under circumstances making it inequitable to retain the benefit without payment for its value. 259 Kan. at 177.

24

Liability and recovery under unjust enrichment is limited to circumstances where the parties' dispute is not related to an express, written contract. See *Whan v. Smith*, 130 Kan. 9, Syl., 285 P. 589 (1930) ("A party cannot recover on the theory of quantum meruit, where there is a written contract, and he alleges full performance by himself and breach by the other contracting party, unless the contract is void, unenforceable, rescinded, or his rights thereunder have been waived."); *Tronsgard v. FBL Financial Group, Inc.*, 312 F. Supp. 3d 982, 1008-09 (D. Kan. 2018). Here it is undisputed that the parties have an express, written contract for the sale of the Property. However, that alone does not preclude an unjust enrichment claim. See *Hendrick v. Moresco*, 2017 WL 3113221, at *3 (Kan. App. 2017) (unpublished opinion) ("Recovery under the equitable theory of unjust enrichment is not available *if an express contract addresses the disputed issue*." [Emphasis added.]). The dispositive question in determining whether the Contract (as an express, written agreement) precludes Buyers' unjust enrichment claim is whether the Contract addresses the current dispute.

Buyers argue that the Contract did not contemplate this particular dispute because the parties became aware of the 4600 Judgment Lien so close to the closing date—which did not allow Seller the number of days permitted by the Contract to cure the objection. They also contend that Seller's failure to convey marketable title constituted a breach of contract permitting them to seek to "pursue any remedy and damages available at law or in equity" pursuant to Section 17 of the Contract, which provides:

> "Seller or Buyer shall be in default under this Contract if either fails to comply with any material covenant, agreement or obligation within any time limits required by this Contract. . . . (a) If Seller defaults, Buyer may (i) specifically enforce this Contract and recover damages suffered by Buyer as a result of the delay in the acquisition of the Property; or (ii) terminate this Contract by written notice to Seller and, at Buyer's option, pursue any remedy and damages available at law or in equity."

25

Contrary to Buyers' argument, the Contract considers this situation. The Contract contemplates both that the Buyers would attempt to replat and rezone the Property at their own cost and that the Contract might not result in the sale of the Property. Section 10 of the Contract outlines the Due Diligence period and permits Buyers to explore and obtain, at their own expense, government approval for the Buyers' intended purpose of the Property:

> "10. DUE DILIGENCE: Buyer will have one hundred twent[y] (120) days after the Effective Date of this Contract to perform due diligence (the 'Due Diligence Period') for the purpose of exploring and obtaining approval of governmental authorities for the intended purpose of the Property and any changes in zoning, if necessary."

Section 10 also permits the Buyers to terminate the Contract if they cannot obtain such approvals:

> "Upon presentation by Buyer to Seller of the written refusal(s) of such governmental authorities by Buyer's requests for approval of such intended purposes and zoning . . . , Buyer may deliver written notification to Seller to cancel this Contract and this Contract will be terminated."

Section 11 of the Contract also states that the obligation to complete the Due Diligence efforts rests on the Buyers: "Buyer agrees to assume full responsibility for completing Buyer's Due Diligence in such a manner as to answer all questions necessary to make the decision to purchase the Property."

While the Contract does not state what happens to Buyers' Due Diligence costs in the event the parties do not complete the sale, that does not mean the Contract failed to contemplate the occurrence. The Contract clearly states that Buyers are responsible for all Due Diligence efforts (including costs), which Buyers do not dispute. However, Buyers contend that despite those clear terms, they should only be financially responsible for

26

Due Diligence costs if the parties completed the sale and Buyers purchased the Property. But that is not what the Contract says.

As explained above, the Contract includes an option to terminate without a sale if Buyers objected to matters in the title commitment. In that event, the Contract provides that "Buyer shall be entitled to an [i]mmediate return of the Earnest Money Deposit, and neither party shall have any further rights or obligations under this Contract except as otherwise stated in this Contract." While the Contract does not state what would happen to the costs Buyers incurred for Due Diligence, it also does not address Buyers' other costs incurred such as inspection costs. The lack of Contract language directly referencing the Due Diligence Costs in the event the parties failed to complete the sale simply means the Contract intended that the Due Diligence costs would be treated like Buyers' other costs.

The Contract does not contemplate that the parties will shift Buyers' costs related to the purchase such as legal fees, Due Diligence costs, or inspection costs to the Seller in the event the sale does not go through. When the parties intend a Contract to control their agreement, they are obligated to understand its terms and how those affect their rights and efforts. See, e.g., *Albers v Nelson*, 248 Kan. 575, Syl. ¶ 3, 809 P.2d 1194 (1991) ("Contracting parties have a duty to learn the contents of a written contract before signing it, and such duty includes reading the contract and obtaining an explanation of its terms."). Moreover, as the Contract states, it contains the parties' entire understanding of their agreement. Section 19 states that "[t]his Contract, and any attachments or addenda hereto, constitute the complete agreement of the parties concerning the Property, supersede all other agreements and may be modified only by initialing changes in this Contract or by written agreement."

Buyers argue that despite these clear Contract terms, equity dictates Seller should not receive a benefit from the failed sale. Buyers' argument is understandable, particularly

27

where the failed sale was due to Seller's failure to resolve a title encumbrance. However, that equitable argument does not supersede the Contract terms. "Where contracting parties have carried out negotiations and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights." See 248 Kan. 575, Syl. ¶ 2. Equitable remedies such as unjust enrichment are not meant to change or rewrite contract terms, but to afford a remedy when an express contract does not exist, or does not specifically address the dispute. See *Whan*, 130 Kan. 9, Syl.; *Hendrick*, 2017 WL 3113221, at *3; *Tronsgard*, 312 F. Supp. 3d at 1008-09.

Finally, the likelihood of a failed sale is not so out of the realm of possibility that Buyers could not have foreseen such an occurrence and negotiated more favorable terms. Contracting parties are expected to understand their position and how the Contract impacts their rights and responsibilities. See *Albers*, 248 Kan. 575, Syl. ¶ 4 ("A party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered through fraud, undue influence, or mutual mistake."). Although this result might seem unfair, the court cannot rewrite contract terms to create liability where the parties never intended.

The Contract contemplates that each party will incur costs in attempting to reach a sale, and how and when the Contract might terminate without a sale—which is what occurred here. The district court did not err in granting summary judgment to Seller and Long on the unjust enrichment claim.

3.      *Specific Performance and Injunctive Relief*

On appeal, Buyers state generally that "summary judgment is improper because genuine issues of material fact exist on all claims asserted against Defendants." However, Buyers fail to brief why the district court's summary judgment decision regarding their

28

claims for injunctive relief and specific performance should be reversed. Failure to brief an issue on appeal can result in waiver of the claim. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (Issues not adequately briefed are deemed waived or abandoned.); *Russell*, 306 Kan. at 1089 (A point raised incidentally in a brief and not argued therein is deemed waived or abandoned.). Any appellate claims related to the district court's decision to grant Seller and Long summary judgment on the specific performance and injunctive relief claims are waived or abandoned and will not be addressed.

III. THE DENIAL OF THE MOTION TO AMEND TO ADD THE LONG TRUST

Buyers appear to incidentally argue that the district court erred by not permitting them to amend the petition out of time to add a new defendant. On July 26, 2023, Buyers filed a "Motion to Amend the Petition and Add Scott C. Long Intervivos Trust U/T/D as a Defendant." The district court denied the requested amendment when it found that the sole member of 5700 Barton, LLC, was Long's nonparty trust and that "[t]he Court has already ruled that no more amendments would be allowed as the deadline for doing so has long since passed." Buyers contend that "whether Long's trust is a proper party to this suit is a question of fact essential to assessing liability on Defendants."

Buyers cite no legal authority for their passing argument that the district court erred in not permitting them to amend the petition out of time to add another defendant. This argument appears incidentally briefed and is waived or abandoned. See *Russell*, 306 Kan. at 1089 (A point raised incidentally in a brief and not argued therein is deemed waived or abandoned.).

29

CONCLUSION

The parties entered into a contract for the purchase of property. As part of the Contract, Buyers incurred costs to replat and rezone the Property for the Buyers' intended use. Ultimately, despite continued negotiations, the parties could not reach a final agreement, and they never completed the sale. Buyers believe they should be compensated for their costs to replat and rezone the Property. However, Buyers fail to present a claim affording them such relief. The district court did not err in dismissing Buyers' fraud claim and granting Seller and Long summary judgment on the remaining claims.

Affirmed.